On our docket is Grondal v. Wapato Heritage. And let's see, Mr. Arnold, you may begin. Thank you, Your Honor. May it please the Court. Nathan J. Arnold on behalf of Wapato Heritage LLC. Your Honor, there are three primary areas I'd like to address this morning. The first is our waive their sovereign immunity by actively participating in the litigation. Second, that the government's sovereign immunity was expressly waived under 5 U.S.C. 702. And third, and independent of the sovereign immunity issues, that my client, Wapato Heritage, should have been allowed to continue participating in the trial even after dismissal, assuming that dismissal was proper, which, as Your Honor is aware, we obviously take issue with. So first, Your Honor, that the tribe waived sovereign immunity. The tribe in this case was not merely a passive defendant who did nothing more than make a motion to dismiss, to seek removal from the case because of their sovereign immunity. They argued and they prevailed issues in the matter. Most notably and substantively, they opposed their own members, their own members from receiving counsel through the BIA. They also sought equitable relief from the Court. They sought and received adverse relief with regard to the trust versus fee status of the subject property, Moses Allotment 8. The tribe also joined the government in their successful claim to eject Mill Bay, also adverse to my client's position. And they also successfully argued for speeding up that ejection. Your Honor, under the Ninth Circuit precedent, the tribe, and we certainly do not argue that the tribe does not generally have sovereign immunity. There's no question about that, Your Honor. But when a tribe actively participates in litigation, they go to the court seeking our federal court's wisdom and coercive powers. They then submit to its selectively, quote, participate and then, quote, hide behind a claim of sovereign immunity. Your Honors, with regard to the government under 5 U.S.C. Section 702, a person who suffers a legal wrong because of agency action or who is adversely affected or aggrieved by agency action is able to go to court. Now, Your Honor, what we saw in the below was the voiding of a lease for failure to follow the regulations for leasing Indian allotment land. And I would submit it to the court that that is agency action. That is, therefore, sovereign immunity is waived pursuant to 5 U.S.C. 702. Among those issues, in 2009, without giving notice to my clients, without giving my clients the opportunity to either five-year lease of MA-8 to the Colville Tribe through its agency, Colville Tribal, excuse me, Colville Tribes Enterprise Corporation. So, counsel, remind me of the relief that you sought where you say that the United States has no sovereign immunity, the relief you sought under your APA claim? Your Honor, there's a couple of issues there. What I'm speaking of specifically regarding these leases is that in 2000, and this is the next step that I was getting to, 2014, the BIA and the Colville Tribes renewed that lease without providing proper notice or opportunity for my clients to vote without the other latis having an opportunity to vote. But again, what relief are against the United States? Yes, Your Honor. The relief requested was to declare void the lease that was entered in without the proper regulations and an equitable order that the BIA follow its regulations in collecting and remitting payments under the leases that were properly enforced. The relief against the United States that you were seeking is for the United States to declare the lease void? No, Your Honor, for the court to declare the lease void, which the BIA is necessarily a party to in its fiduciary trust status. But you were also seeking affirmative relief against the BIA and the United States, right? And don't we say that when you're seeking essentially APA relief, you have to make out the elements of essentially a mandamus type cause of action? I'm certain that Your Honor is correct about that. There are several elements though of relief that sought vis-a-vis the United States government in its trustee capacity. At base, Your Honor, what we were asking the government or the BIA specifically to do is simply follow its own regulations. My clients through a life estate, not a, so there's a bit of a wrinkle there. Obviously the panel is aware. As a life estate, we have a significant interest in this property. We should have been given a place at the table in negotiating these things. In addition, the replacement casino lease that was entered into 2014 significantly reduced the amount of rent that was paid. It significantly reduced how it was calculated by only going to certain activities and calculated a percentage off of that. And we submit, and this is a factual issue that should have been explored at the district court level, admittedly, that that was not in the best interest of the Elatsis. In fact, it was to the detriment of most of the Elatsis with one exception, and that is the tribe who had gone out and purchased significant Elatsi interests over a period of time. So what we have here is the BIA kicking winners and losers among its various sessue, which we submit to the district court and to this court is an inappropriate thing for a fiduciary to be doing in any event, regardless of if it's the federal government or any other fiduciary. So, Your Honor, independent of the voiding of the lease, and hopefully to answer your question more, Your Honor, we were seeking the BIA be compelled by the district court to follow the regulations with regards to collecting and remitting funds. So we're not seeking the, what occurred- Counsel, did you allege or prove or avert that there was no other adequate remedy, that this was your only possible remedy? Your Honor, I would have to go back and look at my pleadings to answer that question. I don't want to guess at that, Your Honor. I understand your question completely, but I would have to go back and look, and I do not want to spend the court's time at that. So I apologize for that, Your Honor. I would, obviously, authority trumps intuition. I don't believe that there is another remedy where the BIA is the government agency that controls these relationships. Their authority is required to enter into these types of leases, and they have granted themselves the authority and the jurisdiction over these payments. Now, where the payment issue came up is in what's referred to as the SELS report. The SELS report came into my client's possession through a FOIA request, and it had been not disclosed, despite the fact that my clients, the settlor of my clients, Bill Evans, who was an enrolled member of the tribe, he's the individual that developed this real estate, it was, it could have been provided to him, and it was not. This, again, further demonstrated the lack of candor as a fiduciary, and again, picking winners and losers among various sessue. In addition, the government seems to argue in their brief that these claims should have gone to the Court of Claims. Now, we moved to take these strictly monetary claims to the Court of Claims. If the government has changed that position, and I'm sure it's much more nuanced than this, and counsel will address it if he feels appropriate, I believe it would be appropriate if this be remanded for us to make emotional reconsideration as opposed to a direction to the court based on that. But counsel, isn't the law essentially that if under either the Tucker Act, the Little Tucker Act, or the Indian Tucker Act, the case belongs in the Court of Federal Claims, that in order for a district court to transfer it, the court has to make a determination that the claims are actually viable? Yes, Your Honor. That is my recollection of the issue there. How are your claims against the United States for money damages, the $751,000, et cetera, that you seem to be seeking, how is that under either, obviously not the Little Tucker Act, but either under the Tucker Act or the Indian Tucker Act, how is that claim viable against the United States or against an agency of the United States? I don't understand that. Thank you, Your Honor. So, when we're talking about the viability of that claim, the best evidence of it is the government's own documents. The sales report was commissioned by the government itself, and the finding of that report, which again, was not disclosed to my client, was that these overpayment and underpayment had occurred. So, Your Honor, I would say- But counsel, I'm reading, for example, and this is just an example, on ER 655, I think it's paragraph 284 of your fifth claim, these are amounts due under the master lease. That's how you characterize them. How can you state a claim against the United States for amounts due under the terms of the master lease? The United States certainly didn't know any money under the master lease, right? Yes, Your Honor. So, the BIA administers the master lease on Indian, and all master leases- But I'm asking you, how could the United States, as the sovereign, be liable for the amount due under the terms of the master lease when it was not their obligation to pay? Assuming there was an obligation. So, the obligation is not for the United States, and that is the BIA to pay. The obligation is for the BIA to enforce the lease and collect the payment, including through the Indian individual money accounts of the various allotments. So, I hope that answers Your Honor's question there. I understand there's a distinction. It's still- I still don't understand how the United States could be liable for a money judgment in the amount of $750,000, based on the theory that you're asserting. But please continue with your argument. So, I think the- I'm sorry that I've been unclear about this, Your Honor, but the government is liable to at least carry out its duties sitting as the- sitting as the- I guess the trustee isn't the right term here. Sitting as the intermediary, Your Honor, as between the lessees and the lessors, that it has certain obligations to collect funds, and it failed to do so. And again, that is agency action, or rather inaction. So, Your Honor, lastly, I would like to reserve some of my time if I don't run out. My clients, WAPT, O'Hara, and GLSD should have been allowed to participate in the case below. And this is independent of any of the sovereign immunity issues, as it relates to either the tribe or to the government. These things are not in conflict. My- Mill Bay, who was the lakefront RV park, has consistently taken the position that my clients owe them indemnity. My clients- and that indemnity is, of course, related at least in part- I'm sorry, Your Honor, with regard to which issue? I'm sorry, you had the right to- excuse me, I said it wrong. You had the right to essentially intervene as of right? Yes, Your Honor, I believe you would- yes, if the procedural posture had been different. Okay, but if you had the ability to intervene as of right, why isn't your appeal too late? Why wouldn't you have had to take a direct appeal from the denial order? From the- well, we did not intervene- I'm sorry, Your Honor, I don't understand the question. If I could back up, we were in the case, and in fact, this is a very long case, and on the- right before trial, the court dismissed our claims, and more or less contemporaneous with that, the federal government dismissed its cross claims against us, and then the judge ruled that we could not participate in any pretrial discovery or the trial itself from there forward. So, we were not intervening into the case, we were in the case. But your position was essentially, you had the right to participate in that trial as of right? Yes, Your Honor, and the reason- So, if that's true, wasn't that a collateral order that was immediately appealable? I'm not- I'm sorry if I'm not answering your question directly, Your Honor, I don't think I'm fully understanding it. But the position that we take is that where we had a property interest in this trial, that specifically where Mill Bay has consistently threatened my clients, the- not just the liability of Mill Bay, but the amount of damages themselves affect my client's property interest and downstream litigation exposure, just like many other indemnitores. And as a result, we should have therefore been allowed to present our experts who we had prepared and were ready for trial, we should have been able to argue at trial, and we should have been able to cross-examine people at trial. And indeed, there is- this is not strictly hypothetical either, Your Honor, where Judge Pearson ruled, quote, Mill Bay's trespass was a direct result of the misrepresentations and flowed from the failure to renew the master's lease by Evans and later by Wapato Heritage, end quote. So, I obviously am not conceding that that is issue preclusion for my clients down the road, but it will certainly not help that a ruling like that occurred without our participation when assuming that the long-threatened lawsuit comes to fruition against my clients by Mill Bay. And with that, Your Honor, I'll be happy to answer any additional questions. Otherwise, I'll reserve my time. All right. You can reserve your time. Mr. Smeltzer? Good morning, Your Honor. Good morning, Your Honors. May it please the Court. John Smeltzer for the United States. Your Honors, there are essentially three sets of issues in this appeal. Two concern monetary claims or cross-claims brought by Wapato. They're claims five and six with respect to the sales report. We submit that those claims were properly dismissed for lack of jurisdiction and for failure to state a claim. Then, Wapato also argues on the basis of the appeal claims relating to the so-called replacement leases. These are leases that BIA approved that the Alatsis issued after Wapato's lease expired. We submit that the challenge that was filed to the 2009 lease is moot because that lease has been replaced and that Wapato never pled a challenge to the 2014 lease. And then finally, Wapato argues that they should have been allowed to participate in this trespass trial. Of course, that trial is over and Milvay did not appeal, so we submit that claim is moot for the reasons that Judge Bennett alluded to. But let me take each of those issues in order and answer any questions the Court may have about those claims. So starting with the cross-claims five and six, again, the cross-claims are based on the sales report. And those cross-claims, Your Honor, are essentially monetary claims. Cross-claim five specifically asks for a claim for monetary damages and Wapato moved to transfer both cross-claims to the Court of Federal Claims, calling them monetary claims. Under Section 702, the United States waived federal sovereign immunity to claims other than monetary damages. So 702 doesn't act as a waiver to those monetary claims. And then under the Little Tucker Act and under the Tucker Act, jurisdiction is exclusive over those claims in the Court of Federal Claims because they seek relief for damages greater than $10,000. So Mr. Arnold said, if the Court finds that there's no jurisdiction in the district court, it should remand and allow again to renew the motion to transfer. The Court should not do that for two reasons. One, in their opening brief, Mr. Arnold said that they were no longer challenging and they didn't specifically challenge the denial of the transfer. But secondly, because the district court was right. There is no basis for raising those claims in the Court of Federal Claims as claims against the United States. And quickly, cross-claim five is a cross-claim that alleges an overpayment to the Elatis. And originally, it was alleged simply as a claim to acquire money from the Elatis. And that claim wasn't even initially pled against the United States. Ultimately, when WAPTO moved to transfer it, they recast the claim and claimed it against the United States on a breach of trust theory, presumably. But again, this was money that was allegedly overpaid to the Elatis. So it can't possibly be a breach of trust. And so that theory just can't work against the United States. With respect to claim six, those are claims of a claimed underpayment under the sublease. And the argument there is that the Colville tribes didn't pay enough rent to WAPTO as the holder of the sublease. Those claims, Your Honor, are not valid against the United States because again, the United States wasn't on the claim. The United States could recover. WAPTO, in the sublease, agreed that any dispute over that lease would be taken into tribal court. And so if they had a dispute about rent that they were owed, they should take it to tribal court. WAPTO's theory of that claim is that somehow the money that they were owed under the sublease, according to the sales report, was owed some of that or some of that. As we point out in our brief, the sales report says on net, the Elatis were overpaid by some $750,000. Not one penny of the claimed underpayment from the tribes to WAPTO is owed to the Elatis. So there's no foundation for a breach of trust claim for the United States to collect money on behalf of the trustees. There's just no foundation in the allegations or in the basis in substantive law. Judge Bennett, you're absolutely right that ordinarily you would look to a mandamus standard in this context if you're going to compel a federal agency or officers to do something. And in this case, to compel them to bring an action against the tribe to recover funds. The only regulation that you point to is the BIA's leasing regulations at 25 CFR section 162.108. That regulation is no longer applicable. As we point out in our brief, the currently applicable regulation is section 162.467B. All that regulation says is that the United States or the BIA may take appropriate enforcement actions on behalf of an Indian Elati on a lease if compensations are due. It simply says may. So it reserves a discretionary authority to take action in consultation. It does not impose any mandate. So unless there are any questions about the monetary claims, that's claims five and six. They're monetary claims, don't belong in the district court, don't belong in the court of federal claims because there's no basis for them. I just have one perhaps irrelevant question, but the United States is not arguing that we should find as a matter of law that may always means may, right? The in this regulation, yes. And also in this context where it's a claim to compel enforcement action, in that context, the courts have routinely said that federal discretion in order to bring enforcement actions. The nature of the agency's duties in this area necessarily carries with it discretion. That might not always be the case when the word may is used. I'm not trying to make any generalization about the use of may in every federal statute of regulation, just in this particular one, your honor. And then shifting to the other cross claims that are asserted originally as part of their cross-claim number one, Wapato raised a claim to void the 2009 replacement lease. And they presented a couple of reasons for that, principally because they thought they still had the authority or ability under their master lease, right? That the Bay Mills, I'm sorry, Mill Bay had the ability to remain on the trust land. And so it was tied up within that trust issue. They also argued, right, what counsel is arguing now, a procedural objection with respect to 2009 lease, the objection being that they weren't notified. It didn't have the opportunity to approve that short-term five-year lease with the tribes. That lease expired or would have expired under its own terms in 2014. Before it expired, BIA approved and the Elantes issued a new lease, right, the 2014 lease. So the claims, any claims to set aside the 2009 lease are moved. There's nothing left to set aside. It's not in effect. In the reply brief, Mr. Arnold suggested that maybe the court could remand for a money damages claim with respect to the 2009 lease, but no such claim was ever pled in the original complaint. So that should not be considered. So 2009 lease is off the table. So that brings us to the question only in response of pleading by Wapato to the tribe's motion dismiss on grounds of tribal sovereign immunity. There was never a specific request to the district court, you know, may we amend our complaint to challenge the 2014 lease. So what Wapato is essentially saying in this appeal is that the district court abused its discretion in refusing to allow an amendment that they didn't even request, right? And so what we submit is district court can't possibly have abused its discretion in that context because it was never asked to do this particular thing. And we also would ask the court to recognize that these are very different instruments, the 2014 lease and the 2009 lease. There was the suggestion initially in raising the 2014 lease that somehow it made the claim that the issuance of that lease and the approval of that made the claim against the 2009 lease not moved because they're essentially the same thing, same claim, same lease. But it's just not true. What's clear from the record is the 2009 lease is a short-term five-year lease on particular terms for nine acres of the allotment. In contrast, the 2014 lease covers the entire 175 acres of the allotment and is a 25-year lease with 25-year lease. And it was also approved by the BIA under different proceedings at a different time, right? And the allottees agreed to it under different circumstances, under different facts. None of those facts or circumstances are before the court in an administrative record because no administrative record was ever put together because it was never challenged, right? Wapato never raised an administrative challenge to this before they brought it to this court. So the district court did not recognize it as a claim, did not rule on it, and this court should not hold that the district court somehow abused its discretion for that claim not being brought to the district court. If Wapato wants to challenge the 2014 lease, we're not asking this court to say they can't, right? Because it wasn't before the district court. We're saying it's not before this court of appeal. If they want to challenge it, they can go challenge it. What we're just arguing here is they didn't ask to amend, so it's not probably before the court. So I think that brings us to the last issue, which is the question about participation at trial. We argued in a brief, and I won't belabor it, that they weren't an intervener as of right and were properly denied the right to participate. They weren't named in the claim, either as a party with a plaintiff on the trespass or the government did not seek trespass damages against them. But ultimately, the trial happened. Milbay did not appeal. The judgment is binding against Milbay. Wapato agrees the judgment is binding against Milbay. Wapato agrees that they are not bound by the judgment. The only thing that Wapato argued in its reply brief as a response to the mootness problem here is that while you can go back and have a trial between the United States and Wapato on a trespass claim where the United States has already gotten its damages from Milbay, doesn't seek any damages from Wapato, and it's entirely speculative based on the suggestion that Milbay might bring an indemnification claim, which they did not bring in this very case when they named Wapato as a defendant in this case. Remember, Wapato is a defendant on a complaint by Milbay. They weren't even named in an indemnification claim in this case. Bottom line, no case for controversy under the Article III of the Constitution. It's moot. Unless the court has any questions, I will turn it over to Anna Brady for the tribes. All right, Ms. Brady. Thank you, Your Honor. May it please the court, Anna Brady, counsel for the Confederated Tribes, the Colville Reservation. There is only one remaining issue in this appeal that implicates the Colville Tribes, and that is whether the tribes' immunity from suit indeed bars Wapato's cross-claim seeking to invalidate a 2009 lease of MA-8, the lease which Mr. Smeltzer has ably explained was undisputedly expired in 2014. Your Honors, in arguing that the Colville Tribes somehow waived its immunity in the course of this action, Wapato is advocating for a dramatic expansion of legal precedent regarding waiver of sovereign immunity. This court and the Supreme Court have repeatedly held that any waiver of such immunity must be clear and unequivocal. It cannot be implied, but implied waiver is exactly what Wapato is advancing here. This court should reject that radical invitation and instead affirm that the tribes' sovereign immunity remains fully preserved for at least four reasons. First, because the tribes were involuntarily hailed into this case as a defendant. The tribes did not go to the court as opposing counsel had alleged earlier. Second, because the tribes early on moved to dismiss on the basis of tribal sovereign immunity, putting all parties on notice as to the tribes' immunity from suit, and the tribes stood by that motion, even as the case languished for years. Third, the tribes never brought any claims whatsoever in this suit. Contrary to Mr. Arnold's statement, the tribes did not seek equitable relief in any form. And fourth, because the tribes' participation in this case was at all times limited to defending its sovereign interests in MA-8 from attack by Wapato and Milbay, the tribes complied with affirmative requests from the district court for briefing regarding key issues necessary to resolve the long-standing trespass on MA-8, a parcel of culturally significant Indian land. One of those key issues was the trust status of MA-8, which the Ninth Circuit affirmed in a companion appeal this past December. In addition to being the particular, excuse me, in addition to being the majority owner of MA-8, the Colville tribes possess particularized knowledge about the history and character of MA-8 that was relevant to resolving that central matter. When a new district court judge took over the case in 2019, Her Honor actively managed the case to resolve the trust status and trespass issues ahead of the tribes' motion to dismiss and Wapato's cross claims. It's well established that a trial court has discretion to manage a case and the issues before it as it sees fit, and it was logical to have the tribes participate in briefing on an issue of core interest to the sovereign immunity is a shield, not a muzzle. The tribes submitted updated information regarding the ownership status of MA-8 and identified red herrings in the legal maneuvers and motions brought by Mill Bay and Wapato designed to further attenuate the proceedings, including Wapato's refusal to vacate the premises after the ejectment order issued. That is not the same as seeking affirmative relief. Case law is clear that a tribe's participation in litigation does not constitute waiver of tribal sovereign immunity or consent to counter claims. Such waiver can only be affected by a clear and unequivocal expression. It cannot be implied. It would take a striking expansion of Ninth Circuit precedent and indeed all federal precedent to hold as Wapato urges that the Colville tribes impliedly waived its sovereign immunity despite being involuntarily brought into the case as a defendant and having moved to dismiss on the basis of tribal sovereign immunity. Wapato has pointed to no case where a tribe has been held to have waived sovereign immunity where the tribe neither initiated nor intervened in the action. The two cases that Wapato primarily relies on, U.S. v. Oregon and Sixth Circuit case Rupp v. Omaha Indian tribe are distinguishable because the tribal parties there expressly consented to the jurisdiction of the tribunal. In U.S. v. Oregon through intervention and signing an agreement agreeing to submit all disputes incapable of negotiated resolution to the district court and in Rupp the tribe initiated suit as plaintiff and in its complaint explicitly asked the court to order the defendants to assert any claims they had in disputed land. The Sixth Circuit there held that the plaintiff tribe had expressed unequivocal consent to the counterclaims. I would also note, your honor, that the scope of Wapato's cross claim is drastically divergent from the core dispute raised in this case by Mill Bay. It is tangential. In conclusion, the Colville tribes respectfully request that the court affirm that the tribe's Wapato's cross claim was properly granted. Thank you. Thank you, counsel. Mr. Arnold, you had some time remaining. Thank you, your honor. I agree with counsel for the tribes that they did not initiate this lawsuit. They were hailed into court. There's no disputing that. However, they did seek relief once they were here, including, as counsel indicated, one of the central matters, which is the trust versus fee status of the land. They also sought relief with regard to the question of whether or not, under the regulations, the BIA is obliged to provide independent counsel when a lot of these raise potential conflicts of interest. It is not a case where the tribe initiated. That would be an easier decision for the court, certainly. But this is a case where the tribe also did not simply make a motion to dismiss and then do nothing else and stand on their sovereign immunity. They're attempting to have it both ways, that they move to dismiss for sovereign immunity, but at the same time gain certain advantages, including significant advantages, like the trust versus fee decision, which greatly benefited the tribe to the detriment of my clients. Your honors, Wapato Heritage's investment vehicle was created by Bill Evans. He's the one who developed the land. He was a member of the tribe. His daughter is a beneficiary of my client. She is a member of the tribe, as are his other living descendants. Your honor, the problem with using May in the context of the regulations we're talking about is it allows the BIA to simply pick winners and losers amongst its constituents. This was argued previously to this court. It can do that even without providing counsel, despite the plain language of those regulations. In any event, your honor, my client should have been allowed to at least participate in the trial where there's a property interest at stake. We have significant downstream liability that's affected by that, and we should have been allowed to participate, and we should have been allowed to present our expert testimony. Thank you, your honor. I'm happy to answer any other questions. Thank you very much, counsel. Grandel versus Wapato Heritage will be submitted.
judges: WARDLAW, GOULD, BENNETT